UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-12139-GAO

DANIELLE E. deBENEDICTIS,
Appellant,

v.

WILLIAM M. DOUGHERTY,
Appellee.

OPINION AND ORDER
July 22, 2015

O'TOOLE, D.J.

This is an appeal from a ruling of a United States Bankruptcy Judge for the District of Massachusetts. Following a three-day trial, the judge found that the debt owed to the appellant for legal fees was not to be excepted from discharge as a debt arising from a willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6). The court ruled that the appellant, as plaintiff in the adversary proceeding, had not carried her burden of proof as to the applicability of that exception. The issue presented on appeal is whether the bankruptcy court erred in failing to find that the debtor had the requisite intent to injure and malice necessary for a determination of non-dischargeability under § 523(a)(6).

Section 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*       \*       \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

The parties are in agreement about the applicable law. To show willful and malicious injury, a creditor has the burden of proving by a preponderance of the evidence that the debtor caused an intentional injury to the creditor for which there was no justification or excuse. Kawaauhau v. Geiger, 523 U.S. 57 (1998); Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853 (1st Cir. 1997); Grogan v. Garner, 498 U.S. 279 (1991)).

The trial evidence included the following: Attorney Danielle deBenedictis represented the debtor William Dougherty in a post-divorce complaint for modification of his alimony obligation in the Suffolk County Probate Court. By the fall of 2007, Dougherty owed deBenedictis more than $80,000 in legal fees. They tried to negotiate a resolution, but without success. Dougherty also was dissatisfied with some of deBenedictis's advice concerning the proceeding, and in November 2007 he engaged another lawyer, Justin Maiona, to take over the case. DeBenedictis later withdrew her appearance. In mid-December, the Probate Court rendered a judgment in the proceeding that ordered Dougherty to pay more than half a million dollars to his former wife. Dougherty was stunned by the order.

Dougherty's assets at the time included equity in his condominium of a little over $400,000, an IRA with a balance of about $160,000, a boat that he was trying to sell for a little over $100,000, and an account at an investment firm, Moors & Cabot Investments, that was apparently worth (net of margin owed the firm) a little under $150,000.

On Thursday, January 3, 2008, deBenedictis, through counsel, commenced an action against Dougherty in the Suffolk County Superior Court to recover the legal fees she was owed. She simultaneously moved for approval of a trustee process attachment on the Moors & Cabot account to the amount of $116,665. The court issued an order of notice and set a hearing on the motion for Monday, January 7, at 2:00 p.m. The sheriff's return indicates that the complaint,

summons, and motion were served by leaving them at Dougherty's "last and usual place of abode," a condominium building in Boston, on January 3 at 5:20 p.m.

Dougherty did not appear at the hearing on January 7, and the Court granted the motion and issued a trustee summons addressed to Moors & Cabot in the requested amount. The sheriff's return indicates that the trustee summons was served on an officer of Moors & Cabot at 3:20 p.m. on Tuesday, January 8.

When the summons was received by Moors & Cabot, the value of Dougherty's account was $170.25. On Monday, Dougherty had instructed the firm to liquidate the stock held in his account because he intended to withdraw the funds. He was told he could pick up a check the next day, which he did. He withdrew $148,315 on Tuesday, January 8. There was no evidence as to what time he received the check that day, but it would be a reasonable inference that it was before the service of the trustee summons on Moors & Cabot. At any rate, there is no evidence that specifically supports a conclusion that Moors & Cabot delivered the funds to Dougherty after service of the trustee process summons. The next day, Dougherty gave the check to his new lawyer, Maiona, who deposited it in his IOLTA account.

On January 18, Maiona filed a motion in the Probate Court on Dougherty's behalf, seeking to reopen that court's December judgment. It was supported by an affidavit signed by Dougherty that outlined some details of his financial condition. In the affidavit, Dougherty noted that "Attorney deBenedictis ha[d] already obtained a freeze of my investment account." He added, "As it happens, I had already withdrawn the proceeds of the sale of my stock." He expressed concern "that Attorney deBenedictis will take further steps which will make the proceeds in the amount of $148,315 unavailable to pay the judgment in this case." (Aff. Supp. Rule 59 Mot., Bankr. R. Pt. 4

at 7 (dkt. no. 10).) The motion asked for the Probate Court's guidance as to the disposition of the funds.

In the present case, deBenedictis's theory is that Dougherty learned of the trustee process summons and emptied the Moors & Cabot account before the summons could be served to avoid the attachment. This, she contends, was a willful and malicious injury to her interests within the meaning of §523(a)(6), calling for excepting the debt owed her from the effect of Dougherty's discharge in bankruptcy.

Under Massachusetts law, property to be attached remains unencumbered until service of the attachment is made. "The issuing of a writ does not create [the attachment]. Something more is necessary; and that . . . is the arresting of the debt in the hands of the trustee, which is effected by a service of the writ on him." Creed v. Gilman, 48 N.E. 778, 778 (Mass. 1897). See also M.G.L. ch. 246, § 20 (credits of the defendant are attached when trustee is summoned).

Until that happened, Dougherty's property interest in his account was not limited and he was free to withdraw the funds. So there is substantial doubt that his moving his money before the attachment can be seen as an "injury" to deBenedictis within the intended meaning of the statute. It was a setback, to be sure, but as a practical matter, she was no worse off than before; she just was not better off, as she hoped to be. Although she has argued that Dougherty's actions were a "conversion," it is at least doubtful, if not conclusively incorrect, that an *existing* (as opposed to expected) property interest of hers was taken by him and converted to his own use. In any event, "not every tort judgment for conversion is exempt from discharge." A showing that the injury was "wilful and malicious" is still required. Geiger, 523 U.S. at 64.

It is therefore not necessary to resolve whether a qualifying "injury" occurred. It is clear that the bankruptcy judge reasonably concluded that even if the withdrawal was done with the

intent to beat the attachment (a matter as to which the evidence was equivocal), that did not necessarily establish that it was done with the intent, required by the statute, specifically to injure deBenedictis without cause or justification. As the bankruptcy judge noted, the evidence supported a different understanding of Dougherty's motivations:

> Upon learning of the Judgment, which he did not have the assets to satisfy, he took swift action to pool and disclose his assets to the Probate Court and to pay his new attorneys, some of whom were seeking a reduction of the Judgment. The Court finds that his actions were motivated more by his perceived need to quickly address the sizeable Judgment entered against him and to preserve his assets to satisfy it, rather than a desire to harm deBenedictis. This is less than a showing of egregious misconduct, and the Court cannot conclude from these facts that he intended to injure deBenedictis or that he had no justification or excuse for his actions.

In re Dougherty, 509 B.R. 757, 772 (Bankr. D. Mass. 2014). That is not the only interpretation that the evidence would bear, but it is a reasonable one. It is certainly not clearly erroneous on the evidence. DeBenedictis's argument that the evidence, fairly considered, supported only one conclusion and required a factual finding of a willful and malicious intent to injure is simply wrong. Where the evidence could reasonably support alternate inferences and conclusions, the appellate process generally defers to the judgment of the fact-finder, who had the benefit not only of a written record, but also her observation of the witnesses as they testified. To prevail on appeal, deBenedictis would have to have shown that no reasonable fact-finder could have failed to be persuaded to her argument. On the evidence in this case, that showing is not possible.

The judgment of the bankruptcy judge is AFFIRMED.

/s/ George A. O'Toole, Jr.
United States District Judge